UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAFAEL L. WALKER,

    Plaintiff,

    v.                                 CAUSE NO. 3:22-CV-166-JD-MGG

CHRISTINA CHICO, et al.,

    Defendants.

OPINION AND ORDER

Rafael L. Walker, a prisoner without a lawyer, filed a complaint about the medical care he received after he was injured and reported he was suicidal. ECF 1. The court determined that the uncontradicted medical reports attached to the complaint established that the medical staff acted reasonably in assessing his medical needs. ECF 8. But he was allowed to file an amended complaint based on the events described in the complaint. *Id.* In his amended complaint, he includes more information about his medical claims but also adds additional allegations about his placement in disciplinary segregation and a denial of access to the courts. ECF 10. The amended complaint states a claim related to his medical care, but the new asserted claims are too vague to proceed.

Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro*

*se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Walker alleges that on March 10, 2020, he was assaulted and injured by Sgt. Jeremiah Stone and Sgt. Adam Eng, an assault that is the subject of another lawsuit, *Walker v. Stone*, No. 3:21-cv-827-DRL-MGG (N.D. Ind. filed Oct. 27, 2021). This lawsuit concerns the medical care he received afterwards. Walker alleges that when he arrived at the Medical Services Unit (MSU), he told Nurse Suzanne Webster that he was assaulted by staff and could not feel his hands. ECF 10 at 3. He suspected his hand might be broken, and he had lacerations on both wrists. *Id.* The nurse responded that he was going to lock-up for assaulting staff and she did not have to do anything for him. *Id.* Walker alleges that she refused to treat his hand because staff told her not to, rather than for a medical reason. *Id.* He states that she told him, "Since you want to assault officers you don't get treatment for your hand." *Id.* He explicitly denies that he took back his request for treatment, like Nurse Webster stated in her report. *Id.* at 7.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Walker plausibly alleges that Nurse Webster violated the Eighth Amendment when she refused to treat his injuries based on the belief that he assaulted staff and not for a medical reason.

Walker next alleges that soon after he was refused treatment for his injuries, he began having a mental breakdown and reported to staff that he wanted to hang himself.

ECF 10 at 3. He returned to MSU, and Nurse Webster reportedly refused to do a suicide screening, telling him that he was a "check-in" and could kill himself for all she cared. *Id.* In the original screening order, the court concluded that Nurse Webster's uncontradicted report established that she exercised professional judgment in concluding that Walker's suicide threat was not credible. ECF 8 at 4. Instead, she believed he was attempting to avoid going to lock-up. *Id.* In his amended complaint, Walker alleges he told Nurse Webster that he was not claiming to be suicidal to avoid going to lock-up, noting that he has been in segregation multiple times and never before had he threatened suicide. ECF 10 at 4. Moreover, he says there is a suicide cell in lock-up, so being suicidal would not keep him from going there. *Id.* Walker alleges that Nurse Webster said she did not believe his threats of suicide and said that she did not treat people who assault staff. *Id.* He says she called Dr. Christina Chico and reported the suicide threat, but told the doctor not to put him on suicide watch because he "deserve[s] to suffer." *Id.* Dr. Chico approved Nurse Webster's recommendation. *Id.* This states a plausible Eighth Amendment claim against Nurse Webster and Dr. Chico.

Walker was then taken to segregation, and Sgt. Stone placed him in a cell that had a string hanging from the ceiling. ECF 10 at 4. Sgt. Stone allegedly told Walker to kill himself. *Id.* Walker proceeded to wrap the string around his neck and fall to the ground, causing abrasions to his neck. *Id.*

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In suicide cases, "[i]n order to be liable under the Eighth Amendment, a prison

4

official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Typically, nonmedical staff may rely on medical staff's judgment regarding whether medical care is being appropriately provided. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, nonmedical jail staff may generally trust the professionals to provide appropriate medical attention."). However, here, placing Walker in a cell with a string hanging down and telling him to kill himself allows a reasonable inference that Sgt. Stone was deliberately indifferent to a risk of harm to Walker in violation of the Eighth Amendment.

Walker then returned to MSU. He was placed on suicide watch, but his other injuries were not treated. ECF 10 at 4-5. He said he finally received medical attention on March 20, 2020. *Id.* at 7. His wrist was splinted, and the doctor gave him a shot of Toradol for pain. *Id.* He received an x-ray and was diagnosed with a hand sprain. *Id.*

Although Walker states a claim against Nurse Webster, Dr. Chico, and Sgt. Stone for the treatment of his injuries and suicide threat, he does not state a claim against any of the other defendants based on his medical treatment. Walker sues Wexford of Indiana, LLC, the private company that employed the medical staff at the time of Walker's injury. Wexford could be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), during the time it was performing a state function. *Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, "a private corporation is

5

not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008). Because Walker's allegations against Wexford are based only on the alleged poor decisions that its staff made in connection with his care, he cannot proceed against Wexford.

Walker also alleges Sgt. Eng, is responsible for the denial of medical care. But the amended complaint contains only a conclusory statement that Sgt. Eng was one of several prison staff who told Nurse Webster not to treat his injuries. ECF 10 at 7-8. This is not enough to hold Sgt. Eng responsible for any decisions the nurse made regarding his treatment.

Walker further alleges that J. Wallen refused to process his medical care grievances and that Warden Ron Neal and Captain Christopher Dustin told staff to ignore calls from his family and not to allow his grievances to get turned in. ECF 10 at 6-7. Walker has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Nor is there any identified right for family members to call the prison. Therefore, Walker may not proceed on any claim that grievances or phone calls were ignored or otherwise mishandled.

Turning to the new claims, Walker references a violation of his right to access the courts, alleging that Wallen, Sgt. Stone, Sgt. Eng, Cpt. Dustin, and Warden Neal instructed staff not to turn in any of his legal mail or grievances. ECF 10 at 10. This is insufficient to allege a denial of access to the courts. He has not alleged that these

6

actions hindered his effort to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589 590 (7th Cir. 1998), or that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351, (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017).

Similarly, Walker alleges that Cpt. Dustin, Warden Neal, and Sgt. Stone violated his right to due process by placing him in disciplinary segregation without being sanctioned. ECF 10 at 12. He alleges that he should have been placed in administrative segregation until a hearing was held. *Id.* The constitution generally does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). The prison's categorization of the type of segregation, whether it is called administrative or disciplinary, is not relevant for constitutional purposes; the relevant inquiry is "the length of segregated confinement" and whether "the conditions

7

of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Here, the complaint is silent on both.

For these reasons, the court:

(1) GRANTS Rafael L. Walker leave to proceed against Nurse Suzanne Webster in her individual capacity for compensatory and punitive damages for denying Walker adequate medical care for the injuries to his hands and wrists that occurred on March 10, 2020, in violation of the Eighth Amendment;

(2) GRANTS Rafael L. Walker leave to proceed against Nurse Suzanne Webster and Dr. Christina Chico in their individual capacities for compensatory and punitive damages for providing a constitutionally inadequate response to his suicide threat on March 10, 2020, in violation of the Eighth Amendment;

(3) GRANTS Rafael L. Walker leave to proceed against Sgt. Jeremiah Stone in his individual capacity for compensatory and punitive damages for placing him in a cell with a string hanging down and telling him to kill himself despite knowing about Walker's threat to commit suicide in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES J. Wallen, Ron Neal, Wexford of Indiana, Christopher Dustin, and Adam Eng;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Jeremiah Stone at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 10);

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Suzanne Webster and Christina Chico at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 10);

(8) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Suzanne Webster, Christina Chico, and Jeremiah Stone to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 29, 2022

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT