UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAFAEL L. WALKER,

        Plaintiff,

        v.                                  CAUSE NO. 3:22-CV-166-APR

CHRISTINA CHICO, et al.,

        Defendants.

OPINION AND ORDER

Rafael L. Walker, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding "against Nurse Suzanne Webster in her individual capacity for compensatory and punitive damages for denying Walker adequate medical care for the injuries to his hands and wrists that occurred on March 10, 2020, in violation of the Eighth Amendment[.]" [DE 13 at 8]. Second, he is proceeding "against Nurse Suzanne Webster and Dr. Christina Chico in their individual capacities for compensatory and punitive damages for providing a constitutionally inadequate response to his suicide threat on March 10, 2020, in violation of the Eighth Amendment[.]" *Id.*[1] Dr. Chico and Nurse Webster (the "medical defendants") filed a motion for summary judgment. DE 139. Walker filed a response, and the medical defendants filed a reply. DE 143, 144, 145. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Federal Rule of Civil**

---

[1] Walker is also proceeding "against Sgt. Jeremiah Stone in his individual capacity for compensatory and punitive damages for placing him in a cell with a string hanging down and telling him to kill himself despite knowing about Walker's threat to commit suicide in violation of the Eighth Amendment[.]" DE 13 at 8. Sgt. Stone has not moved for summary judgment.

**Procedure 56(a)**. A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. ***Heft v. Moore***, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." ***Goodman v. Nat'l Sec. Agency, Inc.***, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. ***Farmer v. Brennan***, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" ***Stockton v. Milwaukee Cty.***, 44 F.4th 605, 615 (7th Cir. 2022) (quoting ***Donald v. Wexford Health Sources, Inc.***, 982 F.3d 451, 458 (7th Cir. 2020)); *see also* ***Rasho v. Jeffreys***, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." ***Board v. Farnham***, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The medical defendants have submitted affidavits and Walker's medical records which show the following facts: On the evening of March 10, 2020, custody staff brought Walker to the nurse's station after OC spray was administered during a shakedown. DE 140-2 at 1; DE 140-5 at 1-3. Nurse Webster noted Walker was able to walk normally without any obvious signs of injury. *Id.* Walker did not relay any specific concerns regarding his medical condition and

3

refused to answer various questions. DE 140-2 at 1-2; DE 140-5 at 2. Instead, Walker's conversation was focused on convincing custody staff not to move him to restricted housing. *Id.* He was escorted for a decontamination shower. *Id.*

After the decontamination shower, custody staff escorted Walker back to the nurse's station and informed Nurse Webster that Walker now wanted medical treatment. DE 140-2 at 2; DE 140-5 at 2. Walker informed Nurse Webster he could not feel his hands because they had been cuffed behind his back. *Id.* Nurse Webster asked more questions, but Walker stated to "forget it" and that he did not want to waste her time. *Id.* He was escorted out of the nursing station by custody staff. *Id.*

A few minutes later, custody staff escorted Walker back to the nurse's station and informed Nurse Webster he now was claiming to be suicidal. DE 140-2 at 2; DE 140-5 at 2. When Walker arrived at the nurse's station, Nurse Webster observed him laughing with custody staff. *Id.*[2] She spoke with Walker, and he informed her he was suicidal. She challenged him noting she had just seen him laughing and she already had spoken to him numerous times that night. *Id*. Nurse Webster believed Walker was claiming to be suicidal to avoid going to restricted housing. He had not mentioned being suicidal during their previous interactions and only started claiming to be suicidal once it was time to go to restricted housing. *Id.* Nurse Webster completed a suicide screen and noted Walker was bargaining with custody staff about avoiding restricted housing. *Id.*[3] She made a phone call to Dr. Chico, a psychologist, to inform her of the events of the evening and to get her assessment of Walker. *Id.* Dr. Chico was not familiar with Walker

---

[2] Walker disputes that he was "laughing with the same individuals who had just assaulted & injured him." DE 143-1 at 8. The court accepts as true that Walker was not laughing with the individuals who assaulted him. But Walker does not dispute Nurse Webster's attestation that she observed him laughing in the nurse's station.

[3] Walker disputes that he was bargaining with custody staff about being sent to restricted housing. DE 144 at 3.

4

because he was not a patient on her active roster and did not have any significant history of suicidal ideation or mental illness. DE 140-3 at 1. At that point, Dr. Chico did not order a suicide watch because it did not appear Walker had genuine suicidal ideation and she knew he was going to be placed in a secure location. *Id.* at 1-2; DE 140-2 at 2-3; DE 140-5 at 2. Walker was transported to restricted housing by custody staff. DE 140-2 at 3.

About 15 minutes later, custody staff brought Walker back to the nurse's station after another administration of OC spray. DE 140-2 at 3; DE 140-5 at 2. Custody staff informed Nurse Webster that Walker was observed placing a string around his neck[4] immediately after he was placed into his cell. *Id.* He did not have any obvious signs of injury and was given another decontamination shower. *Id.* Nurse Webster again contacted Dr. Chico, and this time Walker was placed on suicide watch and scheduled to be seen by mental health staff the next day. DE 140-2 at 3; DE 140-5 at 2-3; DE 140-3 at 2.

The next day, Walker was assessed by mental health professional ("MHP") Maureen Quinn regarding his suicidal ideation. DE 140-5 at 4-6. MHP Quinn discussed Walker's mental health history with him and concluded he did not have any significant symptoms. *Id.* Walker remained on suicide watch and was scheduled for daily follow-up visits with mental health staff. *Id.* Later that day, Walker was assessed by Nurse Stephanie McLain with what she noted as self-inflicted superficial lacerations to his left wrist without any active bleeding. *Id.* at 9. The lacerations were washed with soap and water and ointment was applied. *Id.* He was returned to his cell under constant suicide watch. *Id.*

---

[4] There is no indication whether the string was of sufficient strength to support Walker's weight. The undisputed reference to "string" suggests it was not.

5

The following day, Walker was again assessed by MHP Quinn. DE 140-5 at 20-21. Walker reported he was "hearing things" and needed help with his childhood trauma and stated he would kill himself if he had to stay in restricted housing. *Id*. MHP Quinn opined Walker appeared to be using suicide watch for secondary gain and did not believe his threats were significant. *Id.* A few days later, on March 16, 2020, Walker was seen by a psychologist, and his suicide watch was discontinued. *Id.* at 33-35.

On March 18, 2020, Walker was assessed by a non-party nurse and reported wrist pain since March 10. DE 140-5 at 36. An assessment found no swelling or bruising. Walker could make a fist and move the wrist without difficulty, though he reported pain when doing so. *Id.* Walker's records indicate he was later assessed by Dr. Nancy Marthakis and given an x-ray which showed no significant abnormality. DE 140-2 at 4. He was given naproxen and a Toradol shot and had no further complaints of any wrist problems. *Id.*

Walker is proceeding against the medical defendants on two claims. First, he is proceeding against Nurse Webster for denying him adequate medical care for the injuries to his hands and wrists that occurred on March 10, 2020. Nurse Webster argues summary judgment is warranted in her favor because there is no evidence Walker required treatment for his hands or wrists on March 10. DE 140 at 8-9. Walker responds he received inadequate treatment for the injuries to his hands and wrists because Nurse Webster refused to document or treat his injuries at the direction of correctional officers who wanted to cover up their use of excessive force. DE 143-1 at 7-8, 10-11.

There is no evidence Nurse Webster denied Walker constitutionally adequate treatment for any injuries to his hands or wrists on March 10. Specifically, it is undisputed Walker initially claimed he could not feel his hands because they had been cuffed behind his back. When Nurse

Webster asked follow-up questions he stated "forget it" and that he did not want to waste her time. Walker does not dispute he told Nurse Webster to "forget it" when she tried to assess his condition and does not provide any evidence Nurse Webster was aware he required treatment for his hands or wrists on March 10. There is no evidence Walker had any injuries to his hands or wrists that would have been apparent to Nurse Webster at that time. Because there is no evidence Nurse Webster knew Walker required treatment for his hands or wrists on March 10, and it is undisputed Walker refused treatment when Nurse Webster questioned him, no reasonable jury could conclude Nurse Webster violated his Eighth Amendment rights by denying adequate treatment. *See* **Rodriguez v. Briley**, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot "be permitted to engineer an Eighth Amendment violation"). Summary judgment is warranted in favor of Nurse Webster on this claim.

Second, Walker is proceeding against Nurse Webster and Dr. Chico for providing a constitutionally inadequate response to his suicide threat on March 10. Nurse Webster and Dr. Chico argue summary judgment is warranted in their favor because their initial decision not to place Walker on suicide watch was a valid exercise of their professional judgment. DE 140 at 9-11. Walker responds that the medical defendants maliciously denied him suicide watch because he had assaulted a correctional officer, not as a valid exercise of their professional judgment. DE 143-1 at 7-12.

It is undisputed that Nurse Webster and Dr. Chico initially concluded Walker did not require a suicide watch, but then placed him on suicide watch after he tied a string around his neck. Nurse Webster attests she initially believed Walker was claiming suicidal ideation to avoid going to a restricted housing assignment. He had not mentioned suicidal ideation during their earlier interactions and she had just witnessed him laughing in the nurse's station. Walker argues

7

he could not have been using suicidal ideation as a way to avoid a restricted housing assignment because the restricted housing unit has a suicide watch program. DE 143-1 at 8-9, 12; DE 144 at 5. But this does not refute Nurse Webster's statement that she believed Walker was *trying* to use suicidal ideation to avoid a restricted housing assignment, even if the strategy was not viable. Because it is undisputed Nurse Webster observed Walker laughing and had several conversations with him that evening where he did not mention any suicidal ideation, she and Dr. Chico were within their professional judgment to believe Walker was fabricating his complaints for secondary gain. *See* **Olson v. Morgan**, 750 F.3d 708, 713 (7th Cir. 2014) (prison officials are not expected to believe everything that a prisoner tells them); *see also* **Horshaw v. Casper**, 910 F.3d 1027, 1029 (7th Cir. 2018) (prison staff is not deliberately indifferent for reasonably disbelieving a prisoner's assertion). It is undisputed that once Walker persisted in his claims of suicidal ideation and tied a string around his neck, the medical defendants responded by placing him on suicide watch and scheduling him for mental health treatment. Based on the evidence in the record, no reasonable jury could conclude the medical defendants violated Walker's Eighth Amendment rights by providing a constitutionally inadequate response to his suicide threat on March 10. Summary judgment is warranted in favor of the medical defendants on this claim.

For these reasons, the court:

(1) **GRANTS** the medical defendants' motion for summary judgment [DE 139]; and

(2) **DISMISSES** defendants Suzanne Webster and Christian Chico from this case.

This case is now proceeding only on Walker's remaining claim against Sgt. Jeremiah Stone in his individual capacity for compensatory and punitive damages for placing him in a cell with a string hanging down and telling him to kill himself despite knowing about Walker's threat to commit suicide in violation of the Eighth Amendment.

SO ORDERED on this 14th day of August, 2024.

                                                s/ Andrew P. Rodovich
                                                MAGISTRATE JUDGE
                                                UNITED STATES DISTRICT COURT